**CAE INDUSTRIES LTD., CAE–Link Corporation and Allen Holdings Corporation, Plaintiffs,**

v.

**AEROSPACE HOLDINGS COMPANY, the Singer Company, and Paul A. Bilzerian, Defendants.**

**No. 89 Civ. 2845 (CBM).**

United States District Court, S.D. New York.

May 15, 1990.

See also, D.C., 741 F.Supp. 388.

Shearman & Sterling, New York City (Carole L. Fern, Lorraine K. Rak, of counsel), for plaintiffs.

Oppenheimer, Wolff & Donnelly, New York City (Herbert C. Ross, Jr., of counsel), for defendants Aerospace & Singer.

Myerson, Cooper, Stahl & Zelmanovitz, New York City (Joseph Zelmanovitz, of counsel), for defendant Bilzerian.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Pursuant to an order issued January 28, 1990, this court granted plaintiffs' request to continue this action against Bilzerian to the extent of allowing discovery to proceed as to Bilzerian's assets. Defendants' request to extend to Bilzerian the Florida Bankruptcy Court's stay as to BiCoastal in this action was denied. The court's reasoning for the said order granting the above requests follows.

I. Background

On April 26, 1989, CAE commenced this action against three defendants—Aerospace Holdings Company ("Aerospace"), Singer and Paul Bilzerian. Singer, alone, has petitioned for relief under Chapter 11 of the Bankruptcy Code.

Defendant Paul Bilzerian is seeking an extension of the automatic stay, authorized by 11 U.S.C. Section 362(a), to CAE's action

against him, claiming that "special circumstances" warrant the extension. Bilzerian asserts that an identity of interest exists between the debtor and himself. Bilzerian was convicted on June 9, 1989 of nine criminal counts of securities fraud, conspiracy and making false statements to the Government. Bilzerian resigned his position as Chairman, Chief Executive Officer and Director of Singer on June 29, 1989. Since his resignation, Bilzerian has been associated with Singer in the sole legal capacity of general partner of Singer's controlling shareholder.

At a hearing held on January 22, 1990, plaintiffs in this action (together, "CAE") requested that they be granted permission to continue this litigation against Bilzerian, by noticing him for discovery. Plaintiffs contend that the initial scope of CAE's discovery would include any efforts by Mr. Bilzerian to secrete assets. CAE claims that such discovery regarding Mr. Bilzerian's assets would have no effect on Singer's reorganization efforts, and that Singer would in no way be prejudiced by such discovery proceeding now.

CAE alleges and asserts that Bilzerian personally defrauded CAE and has intentionally interfered with CAE's contractual rights. After his resignation as Singer Chairman, CEO and Director, plaintiffs allege that Bilzerian continued to tortiously interfere with CAE's contractual right to its post-closing purchase price adjustment, to arbitration, to cooperation, and to audited financial statements. CAE believes that such tortious interference continues up to and includes the present. Plaintiffs, therefore, believe that the facts surrounding this litigation militate against this court's extension of the automatic stay to CAE's claims against Bilzerian. This court agrees.

## II. Scope of the Automatic Stay

Title 11 U.S.C., Section 362(a) limits the extension of an automatic stay to a "proceeding against the debtor." The section's legislative history reveals that the section was intended "to permit the debtor to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984); *See* S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787,

5840–41; H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in part in* 1978 U.S. Code Cong. & Admin. News 5787, 6297. Congress explicitly provided for the expansion of the scope of the automatic stay to co-debtors in Section 1301, 11 U.S.C., which provides for the extension of an automatic stay to actions against co-debtor individuals in Chapter 13.

In *Teachers Ins. & Annuity Ass'n. v. Butler*, 803 F.2d 61, 65, (2d Cir.1986), the Second Circuit ruled that "stays pursuant to [Section] 362(a) are limited to debtors and do' not encompass nonbankrupt co-defendants." *See Fortier*, 747 F.2d at 1330; *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir.1983); *In re Related Asbestos Cases*, 23 B.R. 523, 528–29 (N.D.Calif.1982); *In re Anje Jewelry Co.*, 47 B.R. 485, 486 (Bankr.E.D.N.Y.1983).

The standard used by many courts in making determinations as to the scope of a stay is: if an extension of the stay "would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent co-defendants," which would contravene the purposes underlying the automatic stay, then the stay should be denied. *Fortier*, 747 F.2d at 1330. Therefore, a Section 362 stay is not ordinarily extended to "entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." *Johns–Manville*, 710 F.2d at 1196. *See, e.g. In re All Seasons Resorts, Inc.*, 79 B.R. 901 (Bankr C.D.Calif.1987) (stay did not extend to solvent co-defendant officers of debtor corporation); *Butler*, 803 F.2d at 66 (stay did not extend to solvent partners of bankrupt partnership); *Anje Jewelry*, 47 B.R. at 487 (stay did not extend to president of debtor corporation); *In re Hi–Lo Powered Scaffolding, Inc.*, 70 B.R. 606 (Bankr.S.D.Ohio 1987) (stay did not extend to corporate officers and shareholders of post-confirmation Chapter 11 debtor); *In re Supermercado Gamboa, Inc.*, 68 B.R. 230 (Bankr.D.P.R.1986) (stay did not extend to non-debtor officers and shareholders of debtor corporation); *In re Philadelphia Gold Corp.*, 56 B.R. 87 (Bankr. E.D.Pa. 1985) (stay did not extend to chief operating officer and major shareholder of debtor corporation); *In re Related Asbestos Cases*, 23 B.R. at 529 (stay did not extend to joint tortfeasors); *GMAC v. Yates Motor Co.*, 159 Ga.App. 215, 283 S.E.2d 74 (1981) (stay did not extend to joint tortfeasors).

## III. An Extension Of The Automatic Stay To Bilzerian Is Not Warranted

### A) Defendant's Circumstances Do Not Constitute "Special" or "Unusual" Circumstances Which Would Warrant An Extension Of The Stay

Contrary to what the defendant would have this court believe, special or unusual circumstances do not exist which would warrant an extension of the automatic stay to Mr. Bilzerian. The defendant would have this court interpret Bilzerian's situation as qualifying him for the "unusual circumstances" doctrine of the decision in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

In *Robins,* the court held that in limited "unusual situations", the court was empowered to extend the automatic stay to non-debtor co-defendants. *Id.* at 999. The facts in the instant situation are very different from those in *Robins.* The *Robins* court enjoined the actions as against the non-debtor co-defendants on the basis that any recovery by plaintiffs would reduce the debtor's limited insurance fund, thus affecting the property of the estate. *Robins* involved several products liability suits. Despite the extension of the automatic stay, the *Robins* court recognized that "where the debtor and another are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty [the stay] would clearly not extend to such debtor." *Id.* (*quoting In re Metal Center,* 31 B.R. 458, 462 (D.Conn.1983)).

Therefore, the *Robins* court excluded from the "unusual circumstances" exception those cases in which the non-bankrupt codefendant is "independently liable" to the creditor. *Id. See In re All Seasons Resorts, Inc.,* 79 B.R. 901, 904 (Bankr.C.D. Calif.1987) (court held that "[a]lthough there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws," no "special circumstances" existed to extend the automatic stay to the non-debtor co-defendants). The factual situation in *Robins* is different from the instant case. The *Robins* court concerned numerous products liability suits. The actions as against the non-debtor co-defendants were enjoined by the court on the basis that any recovery by plaintiffs would reduce the debtor's limited insurance fund, thus affecting the property of the estate.

### B) The Claims Against Bilzerian Are Not Derivative In Nature; The Claims Are Direct

The claims against Bilzerian are based upon his individual activity while he was CEO, Chairman and Director of Singer, and after, continuing to the present date. Plaintiffs point out that Bilzerian played a significant role in the transaction underlying this action: Aerospace's transfer to subsidiaries of CAE all of the issued and outstanding capital stock of four of Aerospace's wholly-owned subsidiaries. CAE could have pursued its tort claims solely against Bilzerian. *See, e.g., Provident Tradesmens Bank & Trust v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (joint tortfeasors are not necessary parties); *GMAC,* 283 S.E.2d at 76 (in action for conversion, court refused to extend stay to non-debtor codefendant, since defendants were jointly and severally liable for plaintiff's damages).

In response to disclosure and the submission of the Indemnification agreement marked at the January 22, 1990 hearing as Bilzerian Exhibit 1, plaintiffs urge the court to consider that the Agreement is dated "as of" June 13, 1989—two weeks before Bilzerian resigned his position as Chairman, Chief Executive Officer, and Director of Singer. This date is also six weeks after plaintiffs had commenced this lawsuit.

The agreement, unlike Singer's bylaws, does not contain a "good faith" requirement, and expands the coverage to actions taken by Bilzerian that are "related to" as well as "by reason of" his position at Singer. The agreement provides that Bilzerian is not absolutely entitled to indemnity but, rather, can only be entitled to indemnification after review and determination by independent parties. Plaintiffs submit that Singer's reorganization would not be significantly impacted by the prosecution of its claims against Bilzerian. The court held in *In re All Seasons Resorts, Inc.,* 79 B.R. 901, 904 (Bankr.C.D.Calif.1987):

> Although there is a closeness between debtor and co-defendants by reason of their officer and agent status and their right to indemnification pursuant to debtor's by-laws, the magnitude of the harm to debtor if no stay is in force does not approach the scope of the potential injuries besetting the debtors in *Robins* and *Johns–Manville.*

This court believes the continuation of this action as against Bilzerian will have no material effect upon Singer's reorganization effort. Although defendant Bilzerian relies on *In re Johns–Manville Corp.*, 26 B.R. 420 (Bankr.S.D.N.Y.), *modified*, 8 C.B.C.2d 130 (Bankr.S.D.N.Y.1983) and *Robins*, in advancing the aforementioned argument, this court is not persuaded. The facts relied on in *In re Johns–Manville* and *Robins* are inapposite. In *In re Johns–Manville*, the debtor petitioned under Chapter 11 where more than 11,000 asbestos related law suits were pending against it. Two hundred and fifty separate law suits had been filed against twenty-five key officers, directors, employees and agents of the debtor. The *In re Johns–Manville* court extended the automatic stay to these co-defendants, stating that:

> the massive drain on [debtor's key operating personnel's] time and energy at this critical hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization.

*In re Johns–Manville*, 26 B.R. 405, 420 (Bkrtcy.S.D.N.Y.1983). *See also In re Supermercado*, 68 B.R. at 233 (noting that "the ... relief granted in the *Robins* and *Manville* cases involved a situation in which corporate insiders were distracted, if not overwhelmed, by *thousands* of lawsuits filed against themselves and the debtor corporation.... a reasonable 'breathing spell' for the corporate officers was [therefore] necessary to permit them to formulate and put forward a plan of reorganization free from such distraction".) (emphasis in original).

Here, defendants seek to extend the stay to only one action against a single former corporate insider. The continuation of CAE's claims against Mr. Bilzerian should have no substantive effect upon Singer's reorganization effort. In the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant, such as Bilzerian. *See In re Related Asbestos Cases*, 23 B.R. at 528 ("something more than the mere fact that one of the parties to this lawsuit has filed a Chapter 11 bankruptcy petition must be shown in order that proceedings be stayed against non-bankrupt parties") *See also In re Philadelphia Gold Corp.*, 56 B.R. at 90–91 (failure of proof that continued litigation against co-defendant would thwart reorganization).

For the reasons set forth above, this court denies defendant's application to extend the automatic stay to CAE's claims against defendant Paul Bilzerian in this action and grants CAE's request to begin discovery as to Bilzerian.