**VARIABLE–PARAMETER FIXTURE DEVELOPMENT CORPORATION, Plaintiff,**

v.

**MORPHEUS LIGHTS, INC. and John Richardson, Defendants.**

No. 90 Civ. 5593.

United States District Court, S.D. New York.

Nov. 7, 1996.

Kenyon & Kenyon by Richard L. Mayer, Cary Kappel, Bryan & Cave L.L.P. by Philippe Bennett, New York City, for plaintiff.

Dergosits & Noah by Michael E. Dergosits, Todd A. Noah, San Francisco, CA, for defendants.

## MEMORANDUM DECISION and ORDER

CHIN, District Judge.

After reviewing defendants' objections and plaintiff's responses to those objections, the Court adopts and confirms Magistrate Judge Buchwald's Report & Recommendation dated June 25, 1996. At this time, however, because of the automatic stay in effect pursuant to § 362(a) of the Bankruptcy Code of claims against defendant Morpheus Lights, Inc. ("Morpheus"), I will not order any relief with respect to Morpheus. Plaintiff's motion for discovery sanctions is granted as to defendant John Richardson ("Richardson") to the extent recommended by Judge Buchwald.

## BACKGROUND

### A. *Underlying Cause of Action*

Plaintiff Variable–Parameter Fixture Development Corporation ("Variable") is the owner of all rights and title in United States Letters Patent No. 3,845,351 issued October 29, 1974 for "Method and Apparatus for the Adjustment of a Plurality of Floodlights" (the "'351 patent"). (Am.Compl. ¶ 5). On August 28, 1990, Variable initiated this patent infringement action against Morpheus and its sister corporation, PanCommand Systems, Inc., alleging that defendants were lia-

ble for infringement, contributory infringement, and inducing infringement of the '351 patent. (Pl.Mem. at 2).[1] Variable filed an amended complaint on May 22, 1991 to add the allegation that Morpheus had willfully infringed the '351 patent. PanCommand was subsequently dismissed from this lawsuit for lack of personal jurisdiction and the action has since proceeded against Morpheus. (*Id.* at 2–3).

In December 1992, Variable moved for leave to amend the complaint to add Richardson as a defendant. Richardson founded Morpheus in 1979 to design, manufacture, and market lighting systems and related services in the United States. (*Id.* at 3). Richardson was and continues to be the sole shareholder of Morpheus, and also served as its director and president until several months ago. Variable claims that Richardson directly and actively participated in the willful infringement of the '351 patent and·is personally liable for the damages arising from his tortious conduct. (*Id.* at 3–4).

### B. *Variable's Motion*

In December 1995, Variable moved for the imposition of sanctions against defendants. Specifically, Variable sought a default judgment on the issue of liability, the preclusion of defendants from using any of the financial documents produced after August 4, 1995, the costs of this motion and the costs incurred in reviewing the belated document production. (Report at 1).[2]

Variable's motion was predicated on a number of acts by Morpheus that can best be described as a deliberate and protracted failure by Morpheus to comply with Variable's demands—as well as court orders—for a great deal of discovery. To summarize, the record establishes that: 1) Morpheus failed to produce at least 14,870 relevant documents until after the close of discovery; 2) Morpheus belatedly produced documents in the fall of 1995 that were responsive to several document requests dating back to 1990; and 3) beginning in 1992, defendants were contin-

uously ordered to comply with the ·document demands but, under the representation of three separate law firms, repeatedly failed to do so while falsely assuring the court that full disclosure had been made. (Report at 10–11).

Additionally, defendants have been sanctioned numerous times on a progressive basis all to no avail. Judge Buchwald warned defendants that further discovery abuses would result in the entry of a default judgment. (*Id.*). Judge Buchwald stated that defendants had "clearly engaged in a continuing saga of misconduct ... and have been sanctioned ... for their conduct on numerous occasions." (*Id.* at 11). Judge Buchwald held that "the. specific conduct which is the subject of this motion fully meets the legal standards for the imposition of the severest sanctions. [and] defendants' lengthy pattern of misconduct and the imposition on many occasions of less severe sanctions was ineffective to compel compliance with the court's orders." (*Id.* at 15).

### C. *Report and Recommendation*

On June 25, 1996, Judge Buchwald issued a Report and Recommendation (the "Report"). Based on the acts of defendants, Judge Buchwald recommended that Variable's motion for sanctions be granted. Specifically, the Report recommended that 1) a judgment of default be entered against. defendants on the issue of liability; 2) the burden of proof as to the issues of damages be altered so that defendants have the burden of establishing what portion, if any, of its revenues from the challenged lighting systems were attributable to non-infringing activity; and 3) reasonable costs, including attorney's fees attributable to both the motion and the review of the belated document production, be granted in this case. (*Id.* at 14–16).

### *DISCUSSION*·

Defendants' object to the Report on three separate grounds. First, defendants claim

---

1. References to plaintiff's Memorandum in Support of Variable–Parameter's Motion to Amend Its Complaint to Join Mr. John Richardson as a Defendant are cited as "Pl.Mem. at __."

2. References to Judge Buchwald's Report· and Recommendation dated June 25, 1996 are cited as "Report at __."

that the issuance of the Report as it applies to Morpheus was violative of the automatic stay provisions of the Bankruptcy Code. Defendants argue that since Morpheus had filed a voluntary bankruptcy petition on June 6, 1996, prior to the issuance of the Report on June 26, the Report is void. (Defs.' Objs. at 2).[3] Second, defendants claim that this matter cannot proceed against Richardson in view of Morpheus's bankruptcy petition. Defendants argue that the automatic stay resulting from Morpheus's bankruptcy petition necessarily extends to Richardson because his liability in the patent infringement action is derivative of the claim against Morpheus and is based solely on a generalized alter ego theory. (*Id.*). Finally, defendants object to the specific findings in the Report. They argue that entry of a default judgment was not warranted and that their actions should not have resulted in the burden of proof on damages being shifted to defendants.

### A. *The Automatic Stay*

■ Defendants claim that the issuance of the Report violated the automatic stay provisions of the Bankruptcy Code. They argue that because the text of the Report refers to defendants, and is not limited to Richardson, the entire Report is void. Defendants' interpretation of the Report, however, is incorrect.

Although the text of the Report may refer to "defendants" and not "defendant," this is not indicative of Judge Buchwald's intent. Rather, Judge Buchwald clearly limited the scope of the Report in recognition of the automatic stay applicable to Morpheus. Judge Buchwald stated:

> We have been informed that defendant Morpheus has filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. *As there is another defendant, the automatic stay provisions do not prevent this case from proceeding against defendant John Richardson.* Thus, despite the bankruptcy filing, we are submitting this Report and Recommendation.

(Report at 1 n. 1) (emphasis added). The implications of that statement are clear. Al-

though the Report addresses the actions of both Morpheus and Richardson, the recommendations in the Report are, at this point, meant to apply solely to Richardson.

■ Additionally, the Report is only a *recommendation*, not a judgment or order. Defendants offer no support for the proposition that a recommendation alone, having no binding legal effect, could violate the automatic stay provisions of the Bankruptcy Code. Moreover, the legislative history of § 362 supports the opposite proposition. Congress stated that § 362 is meant to give "the debtor a breathing spell from his creditors [and] . . . permit[ ] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *See* S.Rep. No. 95–989, at 54–55 (1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840–41. The issuance of a report and recommendation does not interfere with these goals. Thus, the mere act of writing the Report did not violate the stay applicable to Morpheus and does not render the Report void.

### B. *The Stay Does Not Apply to Claims Against Richardson*

Defendants claim that the stay applicable to Morpheus as a bankruptcy debtor should be extended to actions against Richardson as well. Defendants argue that 1) Variable's alter ego claims against Richardson are "property" of Morpheus's bankruptcy estate and thus are covered by the stay, and 2) that the relationship between Morpheus and Richardson qualifies as an unusual situation warranting the extension of the stay to Richardson, Morpheus's non-bankrupt co-defendant. (Defs.' Objs. at 9–15).

### 1. *Variable's Claims Against John Richardson are Not Property of Morpheus's Bankruptcy Estate*

■ Defendants assert that the Report, insofar as it applies to Richardson, is void because Variable's claims against Richardson are within the ambit of the automatic stay

---

**3.** References to Defendants' Written Objections to Magistrate Buchwald's June 25, 1996 Report and Recommendation are cited as "Defs.' Objs. at __."

applicable to Morpheus. Defendants argue that the claims against Richardson are "generalized alter ego" claims and that under California law,[4] a generalized alter ego claim is exclusively the property of the debtor. Thus, because § 362(a) imposes a moratorium on all actions against a debtor *or* the debtor's property, see *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), defendants argue that Variable's claims against Richardson are stayed.

In support of their position, defendants rely primarily on *In re Davey Roofing, Inc.*, 167 B.R. 604 (Bankr.C.D.Cal.1994). In *Davey*, the plaintiff sought to recover from the debtor corporation's principal on an alter ego theory approximately $134,000 allegedly owed to the plaintiff by the corporation. *Id.* at 606. The plaintiff claimed that the debtor's principal commingled the corporation's assets with his own and withdrew funds for his personal use. *Id.* The court held that when a corporation has standing under state law to bring veil-piercing claims against its own principal, those claims are property of the bankruptcy estate. *Id.* Therefore, because California law allows a corporation to pierce its own veil, the court in *Davey* held that the alter ego claims alleged by the plaintiff were "property" of the debtor's estate and were within the scope of the automatic stay. *Id.* at 608; *see also Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993) (holding that because the alter ego claim was "a general one . . . [that] could be brought by any creditor of the debtor" the claim was the property of the debtor's estate).

Defendants' reliance on *Davey*, however, is misplaced. Although defendants correctly interpret *Davey* and the law of California on the issue of generalized alter ego claims, they incorrectly characterize the nature of Variable's claims against Richardson. Variable's

alter ego claims allege a "particularized injury" and thus *Davey* is inapposite.

Under California law there are two types of alter ego claims. The first type alleges general injury to the corporation and gives rise to a right of action on the part of the corporation against the "alter ego." *Davey*, 167 B.R. at 608. In the second type, the creditor or other third party files suit claiming that an opposing party is "using the corporate form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 216 Cal. Rptr. 443, 448, 702 P.2d 601, 606 (1985) (citing 6 Witkin, Summary of Cal.Law (8th ed. 1974) Corporations, § 5, p. 4318). In other words, the plaintiff in the letter case is seeking to recover for damages sustained as a result of a "particularized injury" to that plaintiff and not injury to the corporation or creditors of the corporation in general. *See Davey*, 167 B.R. at 608.

Defendants assert that Variable's claim against Richardson is "based on an alter ego theory that Richardson was alleged to have withdrawn the corporate funds available to satisfy a judgment for plaintiff against Morpheus." (Defs.' Objs. at 3). Defendants argue that since Variable has alleged injury only to Morpheus the claim constitutes a "generalized alter ego" claim and thus is the property of Morpheus's bankruptcy estate. (*Id.* at 9).

Defendants' characterization of Variable's claims, however, is simply incorrect. While Variable's amended complaint does allege that Richardson siphoned assets from Morpheus and thereby damaged Morpheus, this is not the gist of the claim against Richardson. Rather, Variable alleges that Richardson "directly and actively participated in . . . willful infringement [of the '351 patent] . . . and is personally liable for the damages arising from his tortious conduct." (Pl.Mem. at

4. Alter ego claims are governed by state law. Accordingly, the state law to be applied to those claims must be determined by the choice of law principles of the forum state—in this case New York. To analyze choice of law problems, New York has adopted an "interest analysis" approach: "The law of the jurisdiction having the greatest interest in the litigation will be applied. . . ." *Kalb, Voorhis & Co. v. American Fin.*

*Corp.*, 8 F.3d 130, 132 (2d Cir.1993) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 582 (1969)). In the present case, because defendants are both residents of California and because the alter ego claim will bear directly on the legal status of a California corporation, California law will be applied to the alter ego claims.

1). Variable claims that as the alter ego of Morpheus, Richardson caused harm directly to Variable. (*Id.* at 2–5). In other words, Variable has alleged a "particularized injury" and not solely injury to the corporation.

Therefore, Variable's alter ego claims against Richardson do not fall into the category of a "generalized alter ego" claim as Morpheus argues. The claim are not for a "general injury, common to all creditors and derivative of injury to the debtor." *In re Sunshine Precious Metals, Inc.*, 157 B.R. 159, 163 (Bankr.D.Idaho 1993). Rather, Variable's claims allege a "particularized injury" and hence they are not property of the bankruptcy estate. *See, e.g., Kalb*, 8 F.3d at 132 (holding that only when a claim is a generalized one, with no particularized injury arising from it, is the claim the property of the debtor); *Davey*, 167 B.R. at 608 (same); *In re Sunshine Precious Metals, Inc.*, 157 at 163 (same).

Accordingly, the claims do not fall within the ambit of the automatic stay applicable to Morpheus. Defendants' contention that this action may not proceed against Richardson is rejected.

## 2. *The Automatic Stay Should Not Be Extended to Richardson*

■ Section 362(a) of the Code provides in part:

a petition filed under Section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of (1) The commencement or continuation, including issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title....

The automatic stay provision of § 362 is one of the most fundamental protections afforded to debtors. It is designed to prevent the dissipation of the debtor's assets during the pendency of a Chapter 11 case and to protect the debtor from a multitude of lawsuits in a number of forums. *In re Johns–Manville Corp.*, 26 B.R. 405, 410 (Bankr.S.D.N.Y. 1983); *Paden v. Union for Experimenting Colleges and Univs.*, 7 B.R. 289, 290 (N.D.Ill. 1980). "It gives the debtor a breathing spell

from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions [and] ... permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *See* S.Rep. No. 95–989, at 54–55 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840–41.

■ Although the plain language of § 362 limits the extension of an automatic stay to a "proceeding against the debtor," *CAE Indus. Ltd. v. Aerospace Holdings*, 116 B.R. 31 (Bankr.S.D.N.Y.1990); *see Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A.*, 10 B.R. 488, 490 (N.D.Ill.1981), there are times when a court may extend the automatic stay to non-bankrupt co-defendants of the debtor. For example, in *A.H. Robins Co., Inc. v. Piccinin*, the court held that in "unusual situations" a court is empowered to extend the automatic stay to non-debtor co-defendants. 788 F.2d 994, 999 (4th Cir.1986); *see also In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903 (Bankr.C.D.Cal.1987). The *Robins* court stated that an "unusual situation" exists, for example, when the debtor and non-debtor are "so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law" or when the "Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code." *Robins*, 788 F.2d at 999.

■ The *Robins* court, however, specifically excluded from the "unusual situation" exception those cases in which the non-bankrupt co-defendant is "independently liable" to the creditor. *Id.* Therefore, where the debtor and non-debtor co-defendant "are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty," a stay clearly cannot be extended to the non-debtor. *Id.* This limitation on the "unusual situation" exception has been adopted in this district and by numerous other courts. *See, e.g., Robins*, 788 F.2d at 999; *CAE Indus.*, 116 B.R. at 32; *Johns–Manville*, 26 B.R. at 411; *In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr.D.Conn.1983).

 

Defendants argue that the stay should extend to actions against Richardson because the relationship between Richardson and Morpheus qualifies as an "unusual situation." Defendants claim that a special relationship exists between Morpheus and Richardson and that they are closely related and "hav[e] a unitary interest in this litigation." (Defs.' Objs. at 14). They allege that Morpheus is an indispensable party to this litigation and allowing the case to proceed against Richardson alone would severely prejudice Richardson's ability to defend himself. (*Id.* at 13).

Defendants' argument, however, is unavailing. Under California law, a judgment obtained against a corporation and its alter ego is enforceable against both separately and leads to joint and several liability. *Mesler,* 216 Cal.Rptr. at 448–49, 702 P.2d at 607; *see also Vacco Indus., Inc. v. Van Den Berg,* 5 Cal.App.4th 34, 6 Cal.Rptr.2d 602, 613 n. 20 (1992) (citing 6 Witkin, Summary of Cal.Law (8th ed. 1974) Corporations, § 5, p. 4318). Therefore, if Variable were to succeed on its alter ego claims, Morpheus and Variable would be joint tortfeasors and Richardson would be "independently" liable to Variable. Thus, because the "unusual situation" exception has been found not to encompass situations where the debtor and non-debtor co-defendant are joint tortfeasors, defendants' reliance on that exception is misplaced. Accordingly, this Court declines to extend the stay to Richardson.

### CONCLUSION

After having reviewed the Report, the objections thereto, and the responses to those objections, I hereby confirm and adopt the Report in its entirety. Accordingly, plaintiff's motion for discovery sanctions is granted and the following relief is ordered: 1) judgment by default will be entered against Richardson on the issue of liability; 2) a trial will be held solely on the amount of damages; 3) the burden of proof as to damages is altered so that Richardson now has the burden of establishing what portion, if any, of Morpheus' revenues from the challenged lighting systems were attributable to non-infringing activity; and 4) Richardson shall pay the reasonable costs incurred by plaintiff, including attorney's fees attributable to both the motion and the review of the belated document production.

The parties are directed to appear for a status conference on November 22, 1996.

SO ORDERED.