**Sharon MILLARD, Plaintiff,**

v.

**DEVELOPMENTAL DISABILITIES INSTITUTE, INC., DDI Enterprises, Martin Fink and Michael Veteri, individually and in their official capacities, Defendants.**

No. CV 01–272.

United States District Court,
E.D. New York.

Aug. 23, 2001.

---

10. This Court previously dismissed Count V on the Defendant's motion.

---

Scott Michael Mishkin, P.C., by Scott Michael Mishkin, Islandia, NY, for Plaintiff.

Shaw, Licitra, Bohner, Esernio, Schwartz & Phluger, P.C., by John H. Hall, Jr., Garden City, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action commenced by Plaintiff Sharon Millard ("Millard" or "Plaintiff") pursuant to the Fair Labor Standards Act and various provisions of New York State law to recover overtime payments. Named as Defendants are Developmental Disabilities Institute ("DDI"), DDI Enterprises ("DDIE"), Martin Fink ("Fink") and Michael Veteri ("Veteri"). DDI has filed a petition in bankruptcy and this case has therefore been stayed as to this defendant. Presently before the court is a motion to extend the stay to the remaining defendants. For the reasons that follow, the motion is denied.

## BACKGROUND

### I. The Parties

DDI is a not for profit organization that is engaged in the business of providing various services for disabled individuals in Nassau and Suffolk counties. DDIE is a separate corporation that services the vehicles used by DDI. Defendant Fink, who is no longer employed by DDI, was formerly DDI's Executive Director. Defendant Veteri continues to serve as DDI's Chief Financial Officer. Plaintiff is an individual who alleges that she was employed by both DDI and DDIE from approximately January 2, 1990 through April 24, 2000.

### II. The Allegations of the Complaint

Plaintiff alleges that as part of her responsibilities she worked in the accounting/finance department of DDI while also handling the daily needs of DDIE. She states that she received a combined weekly salary from the two companies consisting of $155.70 each week from DDIE and $31 per hour for a thirty-five hour week at DDI. Plaintiff alleges that while she typically worked in excess of thirty-five hours each week, the defendant companies failed to pay her overtime wages to which she was entitled. It is the failure to pay earned overtime wages that forms the fac-

tual basis of Plaintiff's Federal and State claims.

### III. The Filing of the Bankruptcy Petition and the Stay

On February 9, 2001, DDI filed a petition for Bankruptcy under Chapter 11 of the Bankruptcy Code. Upon being advised of the filing, the court entered an order closing this case. Shortly thereafter, Plaintiff's counsel advised the court that only defendant DDI had filed for bankruptcy protection and requested that the case be re-opened as to the remaining defendants—DDIE, Veteri and Fink. In an order dated April 2, 2001, the court issued an order directing the Clerk of the Court to re-open the case as to the non-bankrupt defendants.

Following re-opening, this motion was brought seeking to extend the bankruptcy stay as to all defendants and to close this case pending resolution of the bankruptcy case. After outlining the applicable law, the court will turn to the merits of the motion.

### DISCUSSION

#### I. Legal Principles

The Bankruptcy Code provides for an automatic stay of litigation brought against a party filing for bankruptcy protection. 11 U.S.C. § 362(a)(1) (the "Automatic Stay"). The purpose of the Automatic Stay is to allow the debtor to focus all attention on reorganization efforts without the distraction of having to defend against outside litigation. *CAE Industries Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y.1990); *In re Wolf Financial Group, Inc.*, 1994 WL 913278 *2 (Bankr.S.D.N.Y.1994). As all parties recognize, the Automatic Stay applies only to the debtor and does not stay proceedings brought against non-bankrupt co-defen-

dants. *Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 58 (2d Cir.2000), citing, *Teachers Ins. & Annuity Ass'n. v. Butler*, 803 F.2d 61, 65 (2d Cir.1986); *Gray v. Hirsch*, 230 B.R. 239, 241 (S.D.N.Y.1999); *In re Crazy Eddie Sec. Litig.*, 104 B.R. 582, 584 (E.D.N.Y.1989); *In re Anje Jewelry, Inc.*, 47 B.R. 485, 486 (Bankr.E.D.N.Y.1983).

Circumstances exist, however, where extension of the Automatic Stay to non-bankrupt defendants is recognized as appropriate. The power to enter such a stay in derived from 11 U.S.C. § 105 ("Section 105"). This provision allows a court to enter any "order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105. *See, e.g., United States v. Victor Seitles*, 106 B.R. 36, 40 (S.D.N.Y.1989) (construing Section 105 as enabling a court to stay proceedings not within the provisions of the Automatic Stay), *order vacated on other grounds*, 742 F.Supp. 1275 (S.D.N.Y.1990); *In re Anje Jewelry*, 47 B.R. at 486 (same).

Extension of the Automatic Stay to non-bankrupt defendants is a matter of discretion. Factors to consider when deciding whether to exercise such discretion include: (1) whether continuation of outside litigation would so distract individuals important to the reorganization process as to impede the reorganization effort; (2) whether extension of the stay would work a hardship on plaintiffs by giving "unwarranted immunity" to solvent defendants; (3) whether a recovery would so reduce the debtor's limited insurance fund as to affect the property of the estate and (4) whether or not the non-bankrupt party seeking the stay is independently liable to the plaintiff. *CAE Indus.*, 116 B.R. at 32–33; *see A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.1986).

Ultimately, the decisive issue is consideration of the same policy underlying the Automatic Stay—whether extension of the stay is necessary to foster the reorganization process. *See Gray,* 230 B.R. at 243 ("broader rule" is that stay is extended only "when necessary to protect the debtor's reorganization"); *In re Wolf Financial Group, Inc.,* 1994 WL 913278 *11 (Bankr.S.D.N.Y.1994) (stay warranted only if outside action would "embarrass, burden, delay or otherwise impede the reorganization proceedings"). This question must be considered in conjunction with the directive that extensions of the Automatic Stay are the exception rather than the rule and are not favored absent some usual circumstance. *See CAE Indus.,* 116 B.R. at 32.

II. *Disposition of the Motion*

Upon consideration of the above-referenced factors, the court concludes that extension of the Automatic Stay to the non-bankrupt defendants is not warranted. In support of the motion it is argued, chiefly, that defense of this action by defendant Veteri will take precious time away from his efforts in connection with DDI's reorganization. While it is true that defending this case will necessarily take some of defendant Veteri's time away from his reorganization duties, this case is not so complex as to require an inordinate amount of that time. This case is therefore distinguishable from cases ordering a stay of complex litigation that would have severely impacted the debtor's reorganization efforts. *See, e.g., A.H. Robins Co.,* 788 F.2d at 996 (staying approximately 2,000 personal injury lawsuits involving claims arising out of use of Dalkon Shield contraceptive device); *In re Johns–Manville Corp.,* 26 B.R. 420, 422–26 (Bankr. S.D.N.Y.1983) (staying thousands of personal injury asbestos lawsuits brought against debtor's officers and employees).

Discovery in this fairly simple matter should not amount to more than depositions of the parties and review of employment records and documents indicating wages paid. Plaintiff's complaint asserts that Millard is owed wages from both employers amounting to approximately $76,000. Even if DDI were ultimately judged to be jointly and severally liable to Plaintiff along with DDIE (a finding that is far from clear at this juncture) the amount sought is not so great as to substantially deplete the estate of DDI.

In sum, defense of this action by the non-bankrupt defendants will not so distract from the reorganization effort of DDI as to require extension of the stay to the solvent defendants. Accordingly, the motion to extend the Automatic Stay of litigation to defendants DDIE, Veteri and Fink is denied.

*CONCLUSION*

The motion to stay this litigation as against defendants DDIE, Veteri and Fink is hereby denied. The parties are directed to continue with discovery herein and the Clerk of the Court is directed to terminate this motion.

SO ORDERED.