KALB, VOORHIS & CO.,
Plaintiff–Appellant,

v.

AMERICAN FINANCIAL
CORPORATION, Defendant–Appellee.

No. 460, Docket 93–7534.

United States Court of Appeals,
Second Circuit.

Argued Sept. 20, 1993.

Decided Oct. 26, 1993.

Bruce J. Ressler, New York City (Richard F. Bernstein, Ressler & Ressler, of counsel), for plaintiff-appellant.

Peter M. Fishbein, New York City (Jonathan L. Hochman, Steven B. Singer, Kaye, Scholer, Fierman, Hays & Handler, of counsel), for defendant-appellee.

Before: KEARSE and WINTER, Circuit Judges, and POLLACK, District Judge.*

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

MILTON POLLACK, Senior District Judge:

Kalb, Voorhis & Co. ("Kalb, Voorhis"), a holder of debentures issued by Circle K Corporation ("Circle K") prior to filing its Chapter 11 petition for reorganization under the Bankruptcy Code, sues on its own behalf as a creditor to impose liability for the debentures on a former controlling stockholder of Circle K, namely, American Financial Corporation ("AFC"). Kalb, Voorhis claims that Circle K was the alter ego of AFC and that the corporate veil between the two should be pierced. On motion pursuant to Fed.R.Civ.P. 12(b), the district court dismissed the suit on the ground that under the governing state law, the debtor-in-possession or bankruptcy trustee has standing to bring an alter ego suit. Thus, the alter ego claim constitutes property of the debtor corporation, and the debtor-in-possession or bankruptcy trustee, rather than individual creditors, has exclusive standing to assert the claims.

## BACKGROUND

Circle K is a Texas corporation with its principal place of business in Arizona. It filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1988), in the United States District Court for the District of Arizona. During the pendency of the Arizona bankruptcy proceedings, Kalb, Voorhis, a creditor of Circle K, filed a separate suit on its own behalf in the Southern District of New York to "pierce the corporate veil" of Circle K to hold liable its controlling stockholder, AFC, on debentures issued (and subsequently defaulted on) by Circle K.

On July 15, 1991, the Bankruptcy Court appointed a special examiner to investigate the possible claims that might be asserted against AFC on behalf of Circle K's estate. On April 25, 1992, the examiner issued a report analyzing various potential causes of action against AFC. The report did not specifically refer to a veil-piercing claim against AFC, but it recommended that, as an alternative to litigation, Circle K consider reaching a reasonable settlement of all its potential claims against AFC.

Circle K and AFC entered negotiations designed to resolve all disputes between them. They had reached a "handshake deal" as of October 1992 when the parties learned that Kalb, Voorhis had instituted suit in the Southern District of New York to pierce the corporate veil of Circle K to hold AFC liable for the debentures issued by Circle K. The debentures provided that they would be governed by the law of New York, where they were issued, sold, made payable, and traded.

Upon learning of Kalb, Voorhis' allegations in this action, Circle K promptly asserted its right to bring a veil-piercing action against AFC and demanded additional settlement concessions from AFC in exchange for a release of Circle K's veil-piercing claim. As the Bankruptcy Court explained:

> Mr. Brown [CEO of the debtor-in-possession] informed AFC of his belief that the ability to pierce the corporate veil constituted an estate asset. Accordingly, Mr. Brown demanded additional concessions for release of this important asset....

*In re Circle K Corp.,* Nos. 90–5052 to 90–5075, slip op. at 12 (Bankr.D.Ariz. May 27, 1992). In response to Circle K's demand, the parties renegotiated the settlement to increase AFC's payments to the estate and to include an express release of Circle K's veil-piercing claim against AFC. In the settlement, Circle K received benefits from AFC and related parties said to be worth in excess of $90 million.

Both the Official Debenture Holders Committee and Kalb, Voorhis objected to the AFC–Circle K settlement. Kalb, Voorhis also contended that it, rather than Circle K, had the right to assert a veil-piercing claim against AFC. The Bankruptcy Court overruled these objections finding:

> the settlement to have been negotiated between the parties at arm's length, commercially reasonable and in good faith. The Court finds that the settlement offers legitimate concrete benefits to the creditors and the estate and is an appropriate exercise of the business judgment of the debtor in possession.

*Id.* at 13. Shortly after approving the AFC settlement, the Bankruptcy Court confirmed Circle K's Plan of reorganization; the AFC

settlement was an integral part of the Plan. Some Circle K debenture holders (but not Kalb, Voorhis) have appealed the confirmation order, and that appeal is pending before the Arizona district court.

## DISCUSSION

▋ The initial inquiry herein is whether a claim alleging that the debtor or bankrupt is the alter ego of its controlling stockholder constitutes "property" of the bankruptcy estate or debtor-in-possession within the scope of Bankruptcy Code § 541(a). 11 U.S.C. § 541 (1988). Property of the estate does not belong to any individual creditor. If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession.[1] As this Court stated:

> Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded ... on the rights of the debtor and on certain rights of the debtor's creditors. Whether the rights belong to the debtor or the individual creditors is a question of state law....
>
> ....
>
> ... If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.

*St. Paul Fire and Marine Ins. Co., v. Pepsi-Co, Inc.,* 884 F.2d 688, 700–01 (2d Cir.1989) (citations omitted).

### A. *Choice of Law*

▋ The state law to be applied is determined by the choice of law principles of the forum state. New York has adopted an "interest analysis" which requires that:

> the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State

interests are those which relate to the purpose of the particular law in conflict. *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 582 (1969) (citations omitted).

Appellant contends that New York substantive law should apply because the debentures for which Appellant seeks to hold Appellee liable were issued, purchased, and payable in New York, because the underwriters were based in New York, and because the debentures contained a clause stating that New York law should govern. Even though the debentures were issued by Circle K and Appellee was not a party to the debentures, Appellant contends that, as Circle K's alter ego, Appellee is bound by Circle K's agreements. Appellant also contends that New York courts would not apply a foreign law if such application would deprive a New York creditor of a remedy in any forum. Appellant contends that if New York law does not apply, then the law of Arizona—the state of Circle K's principal place of business—should apply. Appellant's arguments, however, are unavailing.

Texas substantive law applies to this alter ego claim because Texas is the place of Circle K's incorporation. The choice of law provisions in the debentures are irrelevant. The issue is the limited liability of shareholders of a corporation—not Circle K's obligations under the debentures. The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders: "Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Soviet Pan Am Travel Effort v. Travel Committee, Inc.,* 756 F.Supp. 126, 131 (S.D.N.Y. 1991) (applying New York choice of law principles). *See also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 307 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent

---

1. Under the Bankruptcy Code, debtors-in-possession and reorganization trustees have essentially the same rights, powers, and duties. 11 U.S.C. § 1107(a) (1988). Thus, the fact that no trustee was appointed does not affect the analysis of this case.

of a shareholder's liability to the corporation ... and to its creditors for corporate debts."). Accordingly, the law of Texas applies to Appellant's alter ego claim.

### B. *Under Texas Law a Creditor Has No Standing to Bring a Veil-piercing Action*

■ Under Texas law, the bankruptcy trustee or debtor-in-possession has exclusive standing to assert veil-piercing claims on behalf of a bankrupt corporation because such claims are the property of the bankruptcy estate. *See In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152–53 (5th Cir.1987) (under Texas law "a corporation may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations ... [The] alter ego action is ... 'property of the [bankruptcy] estate.'"); *Audio Data Corp. v. Monus*, 789 S.W.2d 281, 286 (Tex.Ct.App.1990) (adopting *S.I. Acquisition* to hold that creditor is stayed from asserting alter ego claim against a controlling shareholder because such claim belongs to the bankrupt estate).

*S.I. Acquisition* noted that granting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly: the alter ego action "is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors." 817 F.2d at 1153. *See also PepsiCo*, 884 F.2d at 701 (alter ego claims, "if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors."). Because Appellant's alter ego claim alleges acts by Circle K that were not directed at Appellant specifically and that harmed all creditors equally, such claims are property of the bankruptcy estate and are not assertable by individual creditors.

■ Appellant asserts, however, that Circle K was *in pari delicto* with AFC because Circle K participated with AFC in its self-dealing. According to Appellant, under Texas law, a corporation that is *in pari delicto* with its alleged alter ego cannot maintain a veil-piercing action. Thus, Appellant argues that because Circle K is barred from bringing a veil-piercing action, Appellant must be allowed to assert this claim. However, where the parties do not stand on equal terms and one party controls the other, the *in pari delicto* doctrine does not apply. *See generally Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir.1990) ("Where both parties are *in delicto*, but not *in pari delicto*, a trial court should make findings regarding the respective amount of blame assigned to each, granting relief to the one whose wrong is less."). If the *in pari delicto* doctrine defense applied to a debtor corporation's suit against its controlling shareholder, there could be no cases such as *S.I. Acquisition*, 817 F.2d at 1152–53 (holding that alter ego claim belonged to the bankruptcy estate under Texas law). The *in pari delicto* defense does not apply to such actions because the essential element of such claims is that a controlling shareholder forced the corporation to act for the benefit of the shareholder through domination and control. Because Appellant alleges that AFC dominated and controlled Circle K, the *in pari delicto* doctrine would not bar Circle K from asserting an alter ego claim, and an individual creditor such as Appellant has no standing to assert an alter ego claim.

### C. *Under Ninth Circuit Law Governing Circle K's Arizona Bankruptcy the Trustee had Standing to Bring Veil-piercing Claims.*

Appellant contends that under the Ninth Circuit law governing Circle K's bankruptcy in Arizona, the bankruptcy trustee does not have standing to assert veil-piercing claims. Thus, Appellant argues that if it is not allowed to bring the alter ego claims in New York, such claims could not be brought anywhere by anyone because Circle K, as debtor-in-possession, had no standing to assert the claims in Arizona. Appellant relies on the Ninth Circuit case *Williams v. California 1st Bank* which stated that no bankruptcy trustee "has power under ... the Code to assert general causes of action, such as [an]

alter ego claim, on behalf of the bankrupt estate's creditors." 859 F.2d 664, 667 (9th Cir.1988) (quoting *In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222, 1228 (8th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987)).[2] Appellant's reliance on *Williams* is misplaced.

*Williams* is inapposite on its facts because it was not an alter ego case. In *Williams*, investors asserted federal and state securities fraud claims against a bank that allegedly participated in the debtor corporation's "Ponzi" scheme, whereby the corporation sold investment contracts and notes to individual investors. 859 F.2d at 665. When the investment scheme collapsed, the corporation went into bankruptcy. The corporation's bankruptcy trustee solicited assignments from the investors of their direct securities claims against the bank, proposing to pay "administrative costs" off the top of any recovery and then divide the remainder among the assigning investors. The trustee did not plan to share the recovery with non-assigning investors. *Id.*, at 667. Unlike the usual bankruptcy proceeding, the trustee was not suing on behalf of the bankrupt estate. Instead, the trustee sought to bring claims against a nonbankrupt third party that were assigned to her by investors. The trustee did not argue that the claims belonged to the bankruptcy estate. Unlike the trustee in *Williams*, Circle K would have asserted the present claim in the Arizona bankruptcy proceeding not on behalf of certain creditors but on behalf of the estate.

*Williams* should not be read for the proposition that a bankruptcy trustee does not have standing to assert an alter ego claim. The language Appellant cites for this proposition is clearly dicta because it goes beyond the facts of the case. Furthermore, the language Appellant cites from *Williams* only addresses claims brought by a trustee as a representative of creditors—not claims brought by a trustee to recover property of the estate:

> ... *no* trustee ... has power under ... the Code to assert general causes of action, such as [an] alter ego claim, *on behalf of the bankrupt estate's creditors.*

859 F.2d at 667 (emphasis added). Thus, this language does not apply where the trustee seeks standing to recover property of the estate rather than property belonging to creditors. Furthermore, the case on which *Williams* relies for the cited quotation, *In re Ozark Equip. Co.*, does not support the proposition that a trustee lacks standing to assert veil-piercing claims that belong to the bankruptcy estate. *Ozark* expressly looked to state law to determine whether the claim was the property of the estate because, "whenever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." 816 F.2d at 1225. In *Ozark*, the trustee was denied standing to assert a veil-piercing claim only because under applicable Arkansas state law, such claims could not be brought by the corporation and thus, were not property of the estate. *Id.* The *Ozark* Court specifically noted that

> It is possible that some states permit the corporation or its stockholders to assert an alter ego cause of action to pierce the corporate veil, and thus, that a bankruptcy trustee would be able to enforce the claim on behalf of the debtor corporation under Sections 541 and 704.

*Id.*, at 1226 n. 7. Thus, *Ozark*, cited by *Williams*, would grant a bankruptcy trustee standing to assert an alter ego claim where such a claim belongs to the corporation under state law.

*Williams* does not prevent a bankruptcy trustee from asserting a veil-piercing claim where that claim belongs to the debtor corporation under state law. However, even if it is found that the law of the Ninth Circuit under *Williams* does not permit a bankruptcy trustee or debtor-in-possession to assert an alter ego claim so that Circle K could not have pursued such a claim in its Arizona bankruptcy, it does not follow that Appellant has standing to assert such a claim here. If the Arizona Bankruptcy Court improperly denied Appellant the opportunity to assert its

---

**2.** It should be noted that the Arizona bankruptcy court in the instant case did not rely on *Williams* in refusing to hear Appellant's alter ego claims, but rather relied on Judge Patterson's decision that under New York law Appellant did not have standing to bring such claims.

alter ego claim against AFC so that neither the debtor-in-possession nor individual creditors could assert alter ego claims, Appellant's proper remedy is to appeal the Bankruptcy Court's decision within the Ninth Circuit.

## CONCLUSION

As a creditor of Circle K, Appellant has no standing to assert Circle K's alter ego claims against AFC outside the Circle K bankruptcy proceedings. Under applicable Texas state law, such claims belong to the bankruptcy estate. Accordingly, the District Court's decision dismissing Appellant's complaint for lack of standing is affirmed.